**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**LARRY T. GARMON and JOHN VERTINO,**
Individually and on Behalf of a Class of Others
Similarly Situated,

        **Plaintiffs,**
 v.
               **15-CV-431A(Sr)**

**BOARD OF EDUCATION FOR THE**
**BUFFALO CITY SCHOOL DISTRICT,**

        **Defendants.**

## REPORT, RECOMMENDATION, AND ORDER

    Security officers, on behalf of a putative class, brought this action against the Board of Education for the Buffalo City School District seeking to recover unpaid overtime wages under the Fair Labor Standards Act ("FLSA"). Dkt. No. 1. On July 9, 2015, the Hon. Richard J. Arcara referred the case to the undersigned, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions. Dkt. No. 10. On August 19, 2015, the defendant Board moved for judgment on the pleadings and for summary judgment, and plaintiffs thereafter moved to file an amended complaint. Dkt. Nos. 12 & 15. Counsel for the parties argued before me on November 10, 2015, and I reserved decision. Dkt. No. 21. For the following reasons, I recommend that defendant's motion for judgment on the pleadings and for summary judgment (Dkt. No. 12) be granted and that plaintiffs' motion to amend (Dkt. No. 15) be granted in part.

## BACKGROUND

Plaintiffs Larry T. Gorman and John Vertino and other members of the potential class of former and current security officers in the Buffalo Public School System allege that the defendant Board of Education ("the Board") did not pay or underpaid them for overtime hours worked. Dkt. No. 1, ¶¶ 3-5. On paper, security officers begin their shifts between 7:30 a.m. and 8:30 a.m., dependent on the start time of the school to which the officer is assigned, Monday through Friday (Dkt. No. 1, ¶ 15), working either a 7.5-hour work day (with a one-half hour long lunch) or an 8-hour work day (with an hour long lunch). Dkt. No. 1-1, ¶ 18.

Plaintiffs allege that, in reality, officers must arrive "no less than fifteen (15) minutes prior to the start of their regularly scheduled work shift" to patrol the grounds before the students arrive at school, resulting in "not less than an additional 1.25 hours per work week." Dkt. No. 1, ¶ 16. The demands of the job require that officers work through their scheduled lunch break or take less than 20 minutes for lunch each day, constituting approximately 2.5 hours of uncompensated time per work week. Dkt. No. 1, ¶ 19. Finally, because of scheduled after-school activities, the officers must continue to patrol the building after their regularly scheduled shifts, adding at least 1.25 hours to each officer's work week. Dkt. No. 1, ¶ 22.

The Board also requires that officers work evening shifts at the Buffalo Public Schools Adult Education Center after their regularly scheduled day shifts, from 5 p.m. until 9 p.m., "and sometimes later." Dkt. No. 1, ¶ 24. The officers are paid "a regular non-overtime rate" for these shifts. Dkt. No. 1, ¶ 24. Plaintiffs allege that

defendants are required under the FLSA to pay them one and one-half times the regular rate of pay for any and all hours worked in excess of 40 hours per week.  Dkt. No. 1, ¶ 37.  Plaintiffs also contend that the Board did not pay them for time spent cleaning and maintaining their security uniforms.  Dkt. No. 1, ¶¶ 61-62.

Plaintiffs assert that the Board acted willfully in not paying the officers for overtime hours at the FLSA-mandated rate and for time spent cleaning and maintaining their uniforms as the officers' collective bargaining unit sued the Board in 1995 for similar violations which it agreed to correct.  Dkt. No. 1-1, ¶¶ 25-27.  Moreover, in 1998, the Board settled a case with a different group of its employees alleging similar FLSA violations.  Dkt. No. 1-1, ¶¶ 29-30.

Plaintiffs belong to a collective bargaining unit for the Professional, Clerical, and Technical Employees Association.  Dkt. No. 12-1, ¶ 3.  According to their Collective Bargaining Agreement, the terms of which are still in effect, plaintiffs receive an annual uniform cleaning allowance of $220 and have since 2011.  Dkt. No. 12-1, ¶¶ 3-6.

According to the Board, various "opt-in" plaintiffs ended their employment with defendant beyond the applicable FLSA statute of limitations: April Chapman in 2009; Kathryn LaForce and Wilmer Olivencia in 2010; Jenny Velez in 2011; and Andrea Teresi in April of 2012.  Dkt. No. 12-1, ¶¶ 7-20.

**DISCUSSION AND ANALYSIS**

**Motion for Judgment on the Pleadings**

Defendants move for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. FED. R. CIV. PRO. 12(c). In deciding a Rule 12(c) motion, a district court must "employ[ ] the same standard applicable to dismissals pursuant to Fed.R.Civ.P. 12(b)(6)." *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009) (internal quotation marks omitted). That is, the court accepts as true all facts alleged in the complaint and draws all reasonable inferences in the plaintiff's favor. *Id.* at 43-44. To survive, a plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

**Stating an Overtime Claim under the Fair Labor Standards Act**

"The FLSA mandates that an employee engaged in interstate commerce be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)(1)). When an employer violates this rule, an employee may sue for unpaid or underpaid overtime wages. However, to state a plausible FLSA overtime claim, a plaintiff cannot

4

merely assert that he or she was not paid for overtime hours worked at the rate mandated by the FLSA.  *Nakahata*, 723 F.3d at 201.  Rather, he or she must allege sufficient detail "about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week," *id.*, and that the excess time was uncompensated or undercompensated.  *Lundy v. Catholic Health System of Long Island*, 711 F.3d 106, 114 (2d Cir. 2013).

This Court agrees that the original complaint contains only generalities about plaintiffs' work schedules and fails to detail a single week in which any plaintiff worked in excess of 40 hours without appropriate pay.  Dkt. No. 1.  Allegations that a plaintiff "typically" worked a certain number of hours, "typically" missed meal breaks, "typically" worked 15 minutes before or after his or her shift, or attended meetings or training "typically" lasting 30 minutes or for an "average" number of hours annually do not pass muster under the Second Circuit Court of Appeals' plausibility standard.  As the *Lundy* Court reasoned, such allegations, which only "theoretically" show a plaintiff working more than 40 hours in a given work week "supply nothing but low-octane fuel for speculation, not the plausible claim that is required."  *Lundy*, 711 F.3d at 115.  As such, this Court recommends that plaintiffs' FLSA overtime claims be dismissed without prejudice.  Plaintiffs have asked that should this Court find the original complaint lacking, that they be permitted to amend the complaint as proposed.

**Motion for Leave to Amend**[1]

A party should be permitted to amend the pleadings unless he or she has moved in bad faith or to cause undue delay, or if allowing the party to amend would cause prejudice to the opposing party or would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). In this case, there is nothing to suggest that plaintiffs have moved in bad faith or to delay this case. To the contrary, plaintiffs strenuously argued that the original complaint was legally sufficient to state an FLSA overtime claim and moved to amend the complaint – attaching a proposed amended complaint – only as an alternative to outright dismissal. Even if plaintiffs had not moved to amend, this Court would likely have granted them the opportunity to do so, *Lundy*, 711 F.3d at 11, *Nakahata*, 723 F.3d at 198, consistent with the Second Circuit Court of Appeals' strong preference for resolving disputes on their merits. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). In this regard, plaintiffs have expedited, rather than delayed, this Court's pleadings review. Allowing plaintiffs to amend the complaint, as proposed, would not prejudice the defendants, as the amended complaint does not add any new plaintiffs and the Board has all of the relevant employment records in its possession.

To answer whether allowing plaintiffs to amend their complaint would be futile, this Court reviewed the proposed amended complaint (Dkt. No. 16-2) and proposed exhibits (Dkt. No. 19-1 & 19-2), which include a detailed chart of Garmon and Vertino's work hours from 2011 until 2014. Dkt. No. 19-1, pp. 4-31. The chart, which is

---

[1] I recognize that I have the authority to decide plaintiffs' motion to amend their complaint. I have chosen to put my decision in the form of a recommendation to integrate the circumstances in their totality for purposes of resolving the dispositive motion.

based on Garmon and Vertino's payroll check stubs, enumerates for each week the type of work performed and payment, including pre-shift hours worked, uncompensated pre-shift overtime wages, post-shift hours worked, uncompensated post-shift overtime wages, meal overtime hours worked, uncompensated meal overtime wages, adult education overtime hours worked, uncompensated adult education overtime wages, and general unpaid overtime.  Dkt. No. 19-1, pp. 4-31.  Based on this information, plaintiffs assert that Garmon worked in excess of 40 hours per week and was not compensated at the FLSA rate for 42 weeks in 2012, 40 weeks in 2013, and 28 weeks in 2014 (Dkt. No. 19-1, pp. 4-13) and Vertino worked over 40 hours per week without FLSA overtime pay for 36 weeks in 2011, 18 weeks in 2013, and 26 weeks in 2014.  Dkt. No. 19-1, pp. 16-31.  I find that these new facts "nudge" plaintiffs' FLSA overtime claims from "conceivable to plausible," *Dejesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013), and that allowing plaintiffs to amend their overtime claims would not be futile.  Accordingly, I recommend that plaintiffs' motion to amend their FLSA overtime claims be granted.

**Motion for Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED.R.CIV.P. 56(c).  A fact is "material" only if it has some effect on the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a

material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

**Compensation for Time Spent Cleaning and Maintaining Uniforms**

Defendant moves for judgment on the pleadings arguing that washing uniforms is not "integral and indispensable" to providing security and therefore, is not compensable. In the alternative, defendant moves for summary judgment on the uniform claim because under the Collective Bargaining Agreement, plaintiffs receive an annual uniform cleaning allowance

The Portal-to-Portal Act excludes from FLSA coverage "activities which are preliminary to or postliminary" to the principal function for which an employee is employed. 29 U.S.C. § 254(a)(2). Put another way, an employer need not pay an employee for hours spent performing activities that are not the employee's "principal" job. Courts consider an activity a "principal" task only if an employee is "employed to perform" that function or the activity is "one with which the employee cannot dispense if he is to perform his principal activities." *Integrity Staffing Solutions, Inc. v. Busk*, 135 S. Ct. 513, 517-518 (2014).

Defendant cites to several non-controlling but nonetheless persuasive cases that explicitly hold that officers need not be paid for time spent cleaning or maintaining uniforms. In *Musticchi v. City of Little Rock, Ark.*, 734 F. Supp. 2d 621, 631 (E.D. Ark. 2010), the district court granted summary judgment in favor of the defendant

city employer on the plaintiff police officers' uniform maintenance claim, holding that cleaning their uniforms and polishing their shoes and belts was not essential to the officers doing their job of enforcing the peace. *Id.* "[U]nlike a butcher sharpening a knife or an x-ray technician powering and testing an x-ray machine, LRPD officers can successfully perform their jobs without polishing their uniform and equipment." *Id.* (relying on the Second Circuit Court of Appeals' reasoning in *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 592 (2d Cir. 2007)). Likewise, in *Schwartz v. Victory Sec. Agency, LP*, No. 11CV0489, 2011 WL 2437009, at *5 (W.D. Pa. June 14, 2011), the district court dismissed with prejudice the plaintiff security officers' uniform maintenance claim, reasoning that while the officers may have been required to wear (and therefore, maintain) uniforms, "such actions were not integral and indispensable to [their] principal activity, providing security." *Id.*

Plaintiffs argue that "it is essential and integral to the performance of [p]laintiffs' job that they clearly identify themselves as security personnel. . ." Dkt. No. 16-4, p. 11. The district court in *Dager v. City of Phoenix*, 646 F. Supp. 2d 1085, 1101-02 (D. Ariz. 2009), *aff'd,* 380 F. App'x 688 (9th Cir. 2010), considered and rejected this very same argument, cautioning that such reasoning would require employers in nearly every profession to pay employees to clean their uniforms:

> The logic supporting this contention—that a uniform's ability to identify its wearer somehow renders that uniform necessary to employment—could extend to the employees of almost any profession falling within the FLSA's purview. For example, a municipal refuse collector who dons a brightly-colored jumpsuit adorned with reflective tape may be safer from passing vehicles and toxins contained in refuse as a result of the suit, but that does not make such a jumpsuit "necessary" to the job of refuse collection. Similarly, the "continuum of force" that plaintiffs believe render the uniform necessary to an officer's job duties may

9

> certainly assist a patrol officer in performing some of those duties (*e.g.,* by providing a psychological advantage or diminishing resistance), but such assistance "is necessary to the performance of an officer's duties only in the insufficient sense that uniforms identify many types of workers."

*Dager*, 646 F. Supp. 2d at 1102 (internal citations omitted).  In my view, a security officer can provide security at a school facility, even without a clean uniform, and therefore, uniform maintenance is not the "principal activity" that the officer is employed to perform.  *Integrity Staffing Solutions, Inc.*, 135 S. Ct. at 517-518.  As such, the time that plaintiffs spend cleaning their uniforms is not compensable under the FLSA.  For these reasons, defendant is entitled to judgment on plaintiffs' uniform maintenance claim.

To address defendant's second argument, plaintiffs admit that defendant pays them a uniform allowance (Dkt. No. 16-4, p. 10) and this provides yet another basis to dismiss their uniform maintenance claim.  According to the United States Department of Labor, "the time spent in washing uniforms will not be considered hours worked" if the employer pays the employee either $3.35 per week or $ .67 per day."  *See* U.S. D.O.L. FIELD OPERATIONS HANDBOOK, 30c12(b)(3), (5), located in its entirety at https://www.dol.gov/whd/FOH/index.htm; Dkt. No. 12-3, p. 10 fn.1 & p. 19.  Plaintiffs are paid an annual cleaning allowance of $220.00 under their Collective Bargaining Agreement.  Dkt. No. 19-2, pp. 33, Art. 43.  Recognizing that the Department of Labor's interpretation of the FLSA is not controlling, this Court nonetheless gives it considerable weight in deciding whether time plaintiffs spend cleaning their uniforms is deemed "hours worked" under the FLSA.  *See, e.g., Iaria v. Metro Fuel Oil Corp.*, No. 07-CV-4853(NG), 2009 WL 222373, at *4 (E.D.N.Y. Jan. 30, 2009) (holding that the Field

Operations Handbook, which constitutes the U.S. Department of Labor, Wage and Hour Division's interpretation of the FLSA and regulations is entitled to "considerable weight") (internal citations omitted); *Samson v. Apollo Rest.,* 242 F.3d 629, 638 (5th Cir. 2001) (reasoning that "[i]nterpretive and opinion letters by the Department of Labor do not *per se* bind the court. Such materials, however, do constitute a body of experienced and informed judgment" and the court will give these materials substantial weight") (internal quotations and citations omitted).

Plaintiffs argue that the uniform allowance "does not compensate them for the time they spend attending to their uniforms on a weekly basis." Dkt. No. 16-4, p. 10. However, whether the uniform allowance is adequate is a matter for plaintiffs' union to grieve or negotiate. Dkt. No. 19-2, p. 5 ("Article 2: Negotiation or Impasse Procedures") & pp. 28-29 ("Article 23: Settlement of Disputes"); *see Rogers v. City & Cty. of Denver*, No. CIV.A.07CV00541RPM, 2010 WL 1904516, at *6 (D. Colo. May 11, 2010) (holding that plaintiffs' equipment cleaning wage claim was precluded by the collective bargaining agreement which clearly set forth an annual equipment allowance); *Hellmers v. Town of Vestal, N.Y.*, 969 F. Supp. 837, 844 (N.D.N.Y. 1997) (holding that the plaintiff police officer was not entitled to overtime compensation for time spent cleaning and maintaining his uniform because the collective bargaining agreement between the defendant town and its officers provides a stipend for "either dry cleaning or purchasing new uniforms"). It is not the role of this Court to renegotiate the uncertain terms agreed to by the parties in their Collective Bargaining Agreement. For this additional reason, I recommend that plaintiffs' uniform maintenance claim be dismissed with prejudice.

**Statute of Limitations**

Ordinarily, a plaintiff must bring his or her claim for unpaid overtime "within two years after the cause of action accrued." 29 U.S.C. § 255(a). "[A] cause of action 'accrues' when the employer fails to pay the required compensation for any workweek at the regular pay day for the period in which the workweek ends." 29 C.F.R. § 790.21 (citations omitted). When an employer commits a willful violation, the plaintiff may file his action "within three years after the cause of action accrued." *Id.* An employer willfully violates the FLSA when "the employer either knew or showed reckless disregard for . . . whether its conduct was prohibited" by the statute. *McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988).

Plaintiffs filed the complaint alleging willful FLSA violations on May 12, 2015. Dkt. No. 1. Therefore, any claims that accrued before May 12, 2012, three years prior to the filing date, are barred by the applicable statute of limitations. Defendant has submitted uncontroverted proof that opt-in plaintiffs April Chapman, Katherine LaForce, Wilmer Olivencia, and Jenny Velez all ended their employment with defendant by 2011 (Dkt. No. 12-1, ¶¶ 7-18), and that opt-in plaintiff Andrea Teresi received her last paycheck on April 5, 2012 (Dkt. No. 12-1, ¶¶ 19-20). As these opt-in plaintiffs failed to file in a timely manner, I recommend that summary judgment be granted in favor of defendant on those FLSA claims and that these parties be terminated.

## **CONCLUSION**

For the foregoing reasons, it is RECOMMENDED that defendant's motion for judgment on the pleadings and for summary judgment be granted (Dkt. No. 12) and plaintiffs' motion to amend be granted in part (Dkt. No. 15), consistent with the foregoing decision and as follows:

Plaintiffs' original complaint (Dkt. No. 1) is dismissed;

Plaintiffs' motion to amend is granted with respect to its FLSA overtime claims;

Plaintiffs' uniform maintenance claim is dismissed with prejudice;

Opt-plaintiffs April Chapman, Kathryn LaForce, Wilmer Olivencia, Jenny Velez, and Andrea Teresi are terminated as parties to this action as their claims are time barred; and

Plaintiffs shall file an amended complaint consistent with the foregoing decision.

Therefore, it is hereby **ORDERED** pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation, and Order be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b)(2) and Local Rule 72.  **Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Judge's Order.**  *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72 of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Local Rule 72 may result in the District Judge's refusal to consider the objection**.

The district judge will ordinarily refuse to consider *de novo*, arguments, case law and/or evidentiary material which could have been, but were not presented to

the magistrate judge in the first instance.  *See, e.g., Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).  Local Rule 72 mandates that "[a]ny party filing objections to a Magistrate Judge's order or recommended disposition must include with the objections to the District Judge a written statement either certifying that the objections do not raise new legal/factual arguments, or identifying the new arguments and explaining why they were not raised to the Magistrate Judge."

**SO ORDERED.**

DATED:   Buffalo, New York
         November 2, 2017

                                             *s/ H. Kenneth Schroeder, Jr.*
                                             **H. KENNETH SCHROEDER, JR.**
                                             **United States Magistrate Judge**